IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY, | )<br>)<br>) |
| Plaintiff, | )<br>)<br>) |
| vs. | )<br>) |
| MELCHOR ADVIENTO; JOEMELYN ADVIENTO; JUDY ADVIENTO; JAYMELYN ADVIENTO, | )<br>)<br>)<br>) |
| Defendants. | )<br>)<br>) |

Civ. No. 16-00565 HG-RLP

**ORDER ON INTERPLEADER**


Plaintiff Hartford Life and Accident Insurance Company issued ("Plaintiff Hartford" or "Hartford") a group life insurance policy with an effective date of July 1, 2004. Decedent Erlinda Adviento was insured under the Policy for accidental death.

On October 28, 2007, Decedent Erlinda Adviento was killed by her husband, Defendant Melchor Adviento.

On July 17, 2009, Defendant Melchor Adviento was convicted of second-degree murder in violation of Hawaii Revised Statutes § 707-701.5.

On February 10, 2014, the Hawaii Supreme Court vacated the Judgment and remanded the case for a new trial.  State v. Adviento, 319 P.3d 1131 (Haw. 2014).

On remand from the decision of the Hawaii Supreme Court,

Defendant Melchor Adviento pled guilty on December 1, 2015, to manslaughter in violation of Hawaii Revised Statutes § 707-702(2).

Decedent Erlinda Adviento did not designate a beneficiary under the Policy. The Policy provided that when no beneficiary is named, the proceeds would be payable first to the spouse of the insured, and if not to the spouse, to the surviving children.

Decedent Erlinda Adviento's children are Defendants Joemelyn Adviento, Judy Adviento, and Jaymelyn Adviento.

Plaintiff Hartford claims that it does not know and cannot determine the person or persons legally entitled to the proceeds from the Policy. Plaintiff Hartford claims that it cannot determine if Defendant Melchor Adviento is entitled to the proceeds based on Hawaii Revised Statute § 560:2-803, which provides that someone who commits a felonious and intentional killing of the decedent may not receive the decedent's life insurance proceeds.

Plaintiff Hartford asserts that Defendant Melchor Adviento has refused to disclaim any entitlement to the Policy's benefits. Defendant Melchor Adviento sent Plaintiff Hartford a letter stating that he wants the ability to designate the monetary benefits as he sees fit by giving the entire amount to his daughter.

Plaintiff Hartford requests that the Court make a determination as to the rightful beneficiaries to the Policy.

Plaintiff Hartford states that it has no interest in the benefits from the Policy. Plaintiff Hartford requests that the Policy benefits be deposited with the Court pursuant to Federal Rule of Civil Procedure 22 for Interpleader.

Plaintiff Hartford requests dismissal from the case and attorneys' fees and costs.

Plaintiff Hartford's Complaint for Interpleader is **GRANTED, IN PART, and DENIED, IN PART.**

The Court **GRANTS** Plaintiff Hartford's request that the Court make a determination as to the rightful beneficiaries to the Policy.

The Court **FINDS** that Plaintiff Hartford has no interest in the benefits of the Policy.

Plaintiff Hartford is **DIRECTED** to deposit the proceeds into the Registry of the Court from the life insurance policy for Decedent Erlinda Adviento. The proceeds total $108,000.00.

Once the proceeds are deposited with the Court, Plaintiff Hartford Life and Accident Insurance Company is released from liability arising from the distribution of the $108,000.00 in life insurance policy proceeds for Decedent Erlinda Adviento.

Following its deposit of the proceeds with the Registry of the Court, Plaintiff Hartford is **DISMISSED.**

Defendants Melchor Adviento, Joemelyn Adviento, Judy Adviento, and Jaymelyn Adviento are precluded from initiating any actions against Plaintiff Hartford Life and Accident Insurance

Company relating to the Policy at issue.

Plaintiff Hartford's request for attorneys' fees and costs is **DENIED**.

The Court **FINDS** that Defendant Melchor Adviento is not a beneficiary to the Policy.  Defendant Melchor Adviento is precluded from receiving benefits to Decedent Erlinda Adviento's life insurance policy pursuant to Hawaii Revised Statutes § 560:2-803.

The Court **FINDS** that Defendants Joemelyn Adviento, Judy Adviento, and Jaymelyn Adviento are the rightful beneficiaries to the Policy's proceeds.

Defendants Joemelyn Adviento, Judy Adviento, and Jaymelyn Adviento are entitled to equal parts of the life insurance policy proceeds for Decedent Erlinda Adviento.

## PROCEDURAL HISTORY

On October 19, 2016, Plaintiff Hartford filed its Complaint. (ECF No. 1).

On February 22, 2017, Plaintiff Hartford filed a REQUEST TO CLERK FOR ENTRY OF DEFAULT as to Defendants Joemelyn, Judy, and Jaymelyn Adviento.  (ECF Nos. 17, 18, 19).

On the same date, the Clerk filed ENTRY OF DEFAULT as to Defendants Joemelyn, Judy, and Jaymelyn Adviento.  (ECF Nos. 20, 21, 22).

On April 10, 2017, Plaintiff Hartford filed a MOTION FOR

4

DEFAULT JUDGMENT.  (ECF No. 26).

On June 14, 2017, the Magistrate Judge issued a FINDINGS AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT.  (ECF No. 29).

On July 14, 2017, the District Court denied the FINDINGS AND RECOMMENDATION and requested further briefing from Plaintiff Hartford.  (ECF No. 30).

On September 1, 2017, Plaintiff Hartford filed a MEMORANDUM IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT.  (ECF No. 31).

The Court elects to decide the matter without a hearing pursuant to District of Hawaii Local Rule 7.2(d).


## BACKGROUND

**Group Life Insurance Policy**

Plaintiff Hartford Life and Accident Insurance Company issued a group life insurance policy Number ADD10900 ("Policy") effective July 1, 2004, to the Financial Services Association as the policyholder.  (Policy, attached as Ex. A to the Complaint, ECF No. 1-1).  Bank of Hawaii was a participatory financial organization of the Financial Services Association.

Decedent Erlinda Adviento was a certificate holder of the Financial Services Association's Policy.  (Complaint at ¶ 8, ECF No. 1).

Decedent Erlinda Adviento was insured in the amount of $108,000 in the event of accidental death.  (Id.; Policy, Ex. A,

ECF No. 1-1).

Erlinda Adviento was married to Defendant Melchor Adviento. They had three children together: an elder son, Defendant Joemelyn Adviento; a daughter, Defendant Judy Adviento; and a younger son, Defendant Jaymelyn Adviento. The three children have reached the age of majority.

**Decedent Erlinda Adviento Was Killed By Her Husband, Defendant Melchor Adviento**

On October 28, 2007, Erlinda Adviento was killed by her husband, Defendant Melchor Adviento. State v. Adviento, 319 P.3d 1131, 1140-41 (Haw. 2014).

On November 6, 2007, Defendant Melchor Adviento was indicted upon a charge of murder in the second degree in violation of Hawaii Revised Statutes §§ 707-701.5, 706-656. Id. at 1135.

On July 6, 2009, a jury trial began in the Circuit Court for the First Circuit, State of Hawaii. Id. At the trial, Defendant Melchor Adviento testified that in the month prior to her death, Decedent Erlinda Adviento informed him that she wanted a divorce. Id. at 1137. Defendant Melchor Adviento testified that on October 28, 2007, he arrived home from work around noon. At around 2:30 p.m., a neighbor heard a female scream. Id. at 1138. The neighbor called 911 and when police arrived, Defendant Melchor Adviento opened the door "covered in blood." When asked what happened he responded, "I killed my wife." Id. at 1138-39.

Decedent Erlinda Adviento was stabbed sixteen times with a

serrated bread knife.  Id. at 1139.  Defendant Melchor Adviento

had defensive wounds and lacerations.  (Id.)  Defendant Melchor

Adviento testified that the Decedent stabbed him as well and that

he struggled with her and stabbed her multiple times.  Id. at

1140.

On July 17, 2009, the jury reached an unanimous verdict.

They found Defendant Melchor Adviento guilty as charged, of

murder in the second degree, in violation of Haw. Rev. Stat. §§

707-701.5, 706-656.  Id. at 1142.  The Circuit Court entered

Judgment on October 21, 2009.  Defendant Melchor Adviento was

sentenced to a term of life imprisonment with the possibility of

parole after a minimum of ten years imprisonment.  Id.

**Defendant Melchor Adviento Appealed His Conviction And The Hawaii Supreme Court Vacated The Judgment And Remanded The Case For A New Trial**

Defendant Melchor Adviento appealed the Judgment to the

Hawaii Intermediate Court of Appeals.  On July 10, 2012, the

Intermediate Court of Appeals affirmed the jury verdict and the

Circuit Court's sentence.  State v. Adviento, 128 Haw. 128, 2012

WL 2864226, at *5 (Haw. App. July 10, 2012).

Defendant Melchor Adviento appealed the Intermediate Court

of Appeals' decision to the Hawaii Supreme Court.  On February

10, 2014, the Hawaii Supreme Court vacated the Circuit Court's

Judgment and remanded the case for a new trial.  State v.

Adviento, 319 P.3d 1131, 1140-41 (Haw. 2014).

The Hawaii Supreme Court found that the Circuit Court failed to provide a jury instruction on the affirmative mitigating defense of extreme mental or emotional disturbance even though Defendant Melchor Adviento had chosen to waive the defense as part of trial strategy.  Id. at 1160.

**On Remand, Defendant Melchor Adviento Pled Guilty To Manslaughter In Violation Of Hawaii Revised Statute § 707-702(2)**

On remand, Melchor Adviento entered into a plea agreement with the State of Hawaii as to the killing of his wife, Decedent Erlinda Adviento.  On December 1, 2015, Defendant Melchor Adviento pled guilty to Manslaughter in violation of Haw. Rev. Stat. §§ 707-701.5, 707-707(2).  (Guilty Plea, dated December 1, 2015, in State of Hawaii v. Melchor Adviento, Cr. No. 07-1-2068, Haw. Cir. Ct. 1st Cir.). The guilty plea specifically stated, as follows:

> I plead guilty because, after discussing all the evidence and receiving advice on the law from my lawyer, I believe that I am guilty....**On October 28, 2007, I caused the death of Erlinda Adviento while under the influence of extreme mental or emotional disturbance for which there is a reasonable explanation.**

> (Id. at p. 2).

On February 9, 2016, Defendant was sentenced to a term of imprisonment of 20 years.  Judgment was entered finding Defendant Melchor Adviento convicted and guilty of Manslaughter in violation of Haw. Rev. Stat. §§ 707-701.5, 707-702(2).  (Judgment

entered on February 9, 2016, in <u>State of Hawaii v. Melchor</u>
<u>Adviento</u>, Cr. No. 07-1-2068, Haw. Cir. Ct. 1st Cir.).

**Plaintiff Hartford Attempted To Determine Beneficiaries To The
Proceeds For The Insured Decedent Erlinda Adviento and Filed For
Interpleader**

Plaintiff Hartford was made aware of Decedent Erlinda
Adviento's death on March 13, 2008.  (Notice of Claim, attached
as Ex. C to the Complaint, ECF No. 1-3).  Plaintiff Hartford
wrote to Decedent Erlinda Adviento's eldest son, Defendant
Joemelyn Adviento, requesting further information as to her
death.  (Letters to Joemelyn Adviento dated March 26, 2008, May
31, 2008, August 19, 2008, and September 10, 2008, attached to
the Complaint as Exs. D, G, H, ECF No. 1-4, 1-7, 1-8).

Plaintiff Hartford also contacted Honolulu Police to obtain
further information.  (E-mail to HPD Detective Sheryl Sunia dated
June 24, 2008, attached as Ex. F, ECF No. 1-6).

On September 8, 2008, Defendant Joemelyn Adviento completed
a Preference Beneficiary Affidavit indicating that he, his sister
Defendant Judy Adviento, and his brother, Defendant Jaymelyn
Adviento were the children of the Decedent Erlinda Adviento.
(Preference Beneficiary Affidavit, attached as Ex. I to the
Complaint, ECF No. 1-9).

Plaintiff Hartford monitored Defendant Melchor Adviento's
prosecution and conviction.  Plaintiff Hartford corresponded with
his public defenders to obtain further information as to his

conviction.  (E-mails to Attorney Jonathan Burge dated September 14, 2010, attached as Ex. N to the Complaint, ECF No. 1-14; Letters to the Public Defender's Office dated October 20, 2010 and December 2, 2010, attached as Ex. O to the Complaint, ECF No. 1-15).

On February 13, 2011, Plaintiff Hartford sent a letter to Defendant Melchor Adviento to inquire whether he wished to disclaim any benefits under the Policy.  (Letter to Melchor Adviento dated February 13, 2011, attached as Ex. P to the Complaint, ECF No. 1-16).  Defendant Melchor Adviento responded to Plaintiff Hartford and indicated that he did not wish to disclaim his rights to any benefits.  (Melchor Adviento Response checking "No" as to disclaimer, attached as Ex. Q to the Complaint, ECF No. 1-17).

On March 30, 2011, Hartford requested another Preference Beneficiary Affidavit from Defendant Joemelyn Adviento, which was completed and returned on June 1, 2011.  (Letters to Joemelyn Adviento dated March 30, 2011 and May 2, 2011, attached as Ex. S, ECF No. 1-19; Preference Beneficiary Affidavit executed May 24, 2011, attached as Ex. T to the Complaint, ECF No. 1-20).

Throughout 2011 to 2015, Plaintiff Hartford continued to monitor the appeal of Defendant Melchor Adviento's conviction. (Complaint at ¶¶ 29-39, ECF No. 1).

On February 10, 2014, Defendant Melchor Adviento sent a letter to Plaintiff Hartford and indicated that he did not agree

to the benefits distribution stated in the Policy and believed that his daughter Judy should receive the entire amount. (Letter from Melchor Adviento to Hartford dated January 30, 2014, attached as Ex. AA to the Complaint, ECF No. 1-27).

On March 7, 2014, Plaintiff Hartford was informed that the Hawaii Supreme Court vacated Defendant Melchor Adviento's conviction in State v. Adviento, 319 P.3d 1131, 1140-41 (Haw. 2014). (Complaint at ¶ 36, ECF No. 1).

Defendant Melchor Adviento entered a new guilty plea on December 1, 2015. Plaintiff Hartford takes the position that it is unable to determine the beneficiaries under the Policy. (Complaint at ¶¶ 39-43, ECF No. 1).

On October 19, 2016, Plaintiff Hartford filed a Complaint in Interpleader for the Court to determine who is properly entitled to the Policy proceeds and to enjoin the Defendants from instituting an action against Plaintiff Hartford relative to the proceeds of the Policy. (Id. at pp. 12-13).

**THE CLERK OF COURT'S ENTRY OF DEFAULT AND PLAINTIFF HARTFORD'S MOTION FOR ENTRY OF DEFAULT JUDGMENT**

### A. The February 22, 2017 Entries of Default Are Set Aside

On February 22, 2017, the Clerk of Court issued Entries of Default against Defendants Joemelyn, Judy, and Jaymelyn Adviento.

The Court may set aside an entry of default for good cause pursuant to Federal Rule of Civil Procedure 55(c). The Court has broad discretion in deciding whether setting aside an entry of

default is warranted.  Brady v. United States, 211 F.3d 499, 504 (9th Cir. 2000).  A Court may set aside the entry of default when a defendant may be entitled to relief and setting aside the default will not prejudice the plaintiff.  Franchise Holding II, LLC v. Huntington Restaurants Group, Inc., 375 F.3d 922, 925-27 (9th Cir. 2004).

The Court exercises its discretion to set aside the entries of default against the deceased's children, Defendants Joemelyn, Judy, and Jaymelyn Adviento.  The children have claims to the proceeds from the Policy.  Plaintiff Hartford is not prejudiced by the setting aside of the entries of default.  The claims of Defendants Joemelyn, Judy, and Jaymelyn Adviento's do not interfere with Plaintiff Hartford's claims in interpleader.

### B.    Plaintiff Hartford's Motion For Default Judgment Is Denied

The Court declines to grant Plaintiff Hartford's Motion for Default Judgment.  The legal issue presented in the Complaint favors a decision on the merits as to the rightful beneficiaries of the Policy.  Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

## LEGAL STANDARDS ON INTERPLEADER

There are two steps to an interpleader action.  The first is to determine whether the requirements of interpleader have been met.  28 U.S.C. § 1335.  The second is to adjudicate the adverse

claims of the defendant claimants. <u>N.Y. Life Ins. Co. v. Ct.</u>

<u>Dev. Authority</u>, 700 F.2d 91, 95 (2d Cir. 1983); 28 U.S.C. § 2361.

Federal interpleader procedures are set forth in 28 U.S.C. §

1335 and Federal Rule of Civil Procedure 22.  28 U.S.C. § 1335,

which provides, in pertinent part:

> The district courts shall have original jurisdiction of
> any civil action of interpleader or in the nature of
> interpleader filed by any person, firm, or corporation,
> association, or society having in his or its custody or
> possession money or property of the value of $500 or
> more ... if
>
> > (1)   Two or more adverse claimants, of diverse
> >       citizenship ... are claiming or may claim ...
> >       to be entitled to such money or property ...
> >       and if
> >
> > (2)   the plaintiff has deposited such money or
> >       property ... to the clerk of the court in
> >       such amount and with such surety as the court
> >       or judge may deem proper, conditioned upon
> >       the compliance by the plaintiff with the
> >       future order or judgment of the court with
> >       respect to the subject matter of the
> >       controversy.

Federal Rule of Civil Procedure 22 provides, in pertinent

part:

> **(a)   Grounds.**
>
> > **(1)**   By a Plaintiff.  Persons with claims
> >          that may expose a plaintiff to double or
> >          multiple liability may be joined as
> >          defendants and required to interplead.
> >          Joinder for interpleader is proper even
> >          though:
> >
> > > **(A)**   the claims of the several
> > >          claimants, or the titles on which
> > >          their claims depend, lack a common
> > >          origin or are adverse and
> > >          independent rather than identical;
> > >          or

**(B)** the plaintiff denies liability in whole or in part to any or all of the claimants.

The district court's jurisdiction pursuant to the federal interpleader statute extends to potential, as well as actual, claims. <u>Minnesota Mut. Life Ins. Co. v. Ensley</u>, 174 F.3d 977, 980 (9th Cir. 1999).

## ANALYSIS

### I. Plaintiff Hartford Shall Deposit The $108,000.00 In Life Insurance Proceeds With The Registry of the Court

A stakeholder in a sum of money in an interpleader action is entitled to join all persons having claims to the money and require the defendants to interplead their claims when the plaintiff is or may be exposed to double or multiple liability. <u>Island Title Corp. v. Bundy</u>, 488 F.Supp.2d 1084, 1093 (D. Haw. 2007). Interpleader is appropriate if an insurance company has a real and reasonable fear of colorable conflicting claims to the proceeds of a life insurance policy. <u>Michelman v. Lincoln Nat. Life Ins. Co.</u>, 685 F.3d 887, 895 (9th Cir. 2012).

Here, Plaintiff Hartford has established that it is an insurance company holding proceeds of Decedent Erlinda Adviento's life insurance policy. Plaintiff Hartford has served the Defendants and made efforts to resolve disputes as to the beneficiaries of the proceeds.

Plaintiff Hartford has been unable to determine the beneficiaries to the Policy due to the killing of Erlinda

Adviento by her husband, Defendant Melchor Adviento. (Policy, attached as Ex. A to the Complaint, ECF No. 1-1; Letter from Plaintiff dated May 2, 2011, attached as Ex. S to the Complaint, ECF No. 1-19).

Plaintiff Hartford monitored the criminal proceedings surrounding Decedent Erlinda Adviento's death and obtained judicial records finding and concluding that Defendant Melchor Adviento killed the Decedent.

Plaintiff Hartford sent letters to Defendant Melchor Adviento to determine if he would disclaim his interest in the Decedent's life insurance proceeds given his conviction. Defendant Melchor Adviento declined to disclaim his purported interest.

Plaintiff Hartford seeks a judicial determination of the beneficiaries of the Policy based on the application of Hawaii's slayer statute, codified at Haw. Rev. Stat. § 560:2-803.

Plaintiff Hartford has demonstrated a real and reasonable fear of colorable conflicting claims due to Defendant Melchor Adviento's refusal to disclaim his interest. The Court finds the interpleader action is appropriate.

In an interpleader action involving the possibility of multiple claims, the district court "shall hear and determine the case, and may discharge the plaintiff from further liability, make the injunction permanent, and make all appropriate orders to enforce its judgment." 28 U.S.C. § 2361. The stakeholder shall

deposit the money with the Registry of the Court if it is determined that an interpleader action is appropriate and the stakeholder has no interest in the disputed funds. <u>Michelman</u>, 685 F.3d at 895; <u>Mendez v. Teachers Ins. & Annuity Ass'n and College Retirement Equities Fund</u>, 982 F.2d 783, 787 (2d Cir. 1992).

The Court **FINDS** that Plaintiff Hartford Life and Accident Insurance Company has no interest in the disputed funds.

Plaintiff Hartford Life and Accident Insurance Company is **ORDERED** to deposit into the Registry of the Court the life insurance proceeds for Decedent Erlinda Adviento totaling $108,000.00 pursuant to Federal Rule of Civil Procedure 67.

Plaintiff Hartford Life and Accident Insurance Company is released from liability arising from the distribution of the $108,000.00 in life insurance proceeds from Decedent Erlinda Adviento's Policy.

Following the deposit of the $108,000.00 in proceeds, Plaintiff Hartford Life and Accident Insurance Company is discharged and **DISMISSED** from the instant action.

Defendants Melchor Adviento, Joemelyn Adviento, Judy Adviento, and Jaymelyn Adviento are **PRECLUDED** from initiating any actions against Plaintiff Hartford Life and Accident Insurance Company relating to the Policy at issue.

## II.  Plaintiff Hartford's Request For Attorneys' Fees And Costs Is DENIED

A district court has discretion to award reasonable attorneys' fees and costs to a disinterested stakeholder in an interpleader action.  Abex Corp. v. Ski's Enter., Inc., 748 F.2d 513, 516 (9th Cir. 1984).  It is well-settled that a stakeholder is not entitled to costs and fees it would have incurred in the ordinary course of business.  Fid. Brokerage Servs. LLC v. Caro, 2011 WL 4801523, *2 (S.D.N.Y. Oct. 11, 2011).  Resolving disputed claims for life insurance proceeds is part of the ordinary course of business for an insurance company.  Metro. Life Ins. Co. v. Turner, 2008 WL 2485595, *1 (W.D. Wash. June 17, 2008).

Here, Plaintiff Hartford incurred expenses while attempting to resolve disputed claims as part of the ordinary course of business as an insurance company.  The Court declines to award Plaintiff Hartford attorneys' fees and costs.

Plaintiff Hartford's request for attorneys' fees and costs is **DENIED.**

## III. Defendant Melchor Adviento Is Precluded From Receiving Proceeds From Erlinda Adviento's Life Insurance Policy Pursuant to Hawaii Revised Statutes § 560:2-803

### A.   Hawaii's Slayer Statute

Hawaii Revised Statutes § 560:2-803 sets forth the effect of homicide on intestate succession, wills, trusts, joint assets,

life insurance, and beneficiary designations.[1]  The statute

provides that an individual who "feloniously and intentionally

kills the decedent forfeits all benefits" to the decedent's

estate, including benefits to the decedent's life insurance

policy.  Haw. Rev. Stat. § 560:2-803(b)-(g).

Haw. Rev. Stat. § 560:2-803, enacted in 1996, is commonly

referred to as the Hawaii "slayer statute."  Hawaii's slayer

statute is based on Section 2-803 of the Uniform Probate Code

that was issued by the Uniform Law Commission in 1990.

---

[1] Haw. Rev. Stat. § 560:2 803 provides, in pertinent part:...
(b)    Forfeiture of statutory benefits.  An individual who feloniously
       and intentionally kills the decedent forfeits all benefits under
       this article with respect to the decedent's estate, including an
       intestate share, an elective share, an omitted spouse's,
       reciprocal beneficiary's, or child's share, a homestead allowance,
       exempt property, and a family allowance.  If the decedent died
       intestate, the decedent's intestate estate passes as if the killer
       disclaimed the killer's intestate share.
(c)    Revocation of benefits under governing instruments.  The felonious
       and intentional killing of the decedent:
       (1)    Revokes any revocable:
              (A)    Disposition or appointment of property made by the
                     decedent to the killer in a governing instrument...
(e)    Effect of revocation.  Provisions of a governing instrument are
       given effect as if the killer disclaimed all provisions revoked by
       this section or, in the case of a revoked nomination in a
       fiduciary or representative capacity, as if the killer predeceased
       the decedent.
(f)    Wrongful acquisition of property.  A wrongful acquisition of
       property or interest by a killer not covered by this section must
       be treated in accordance with the principle that a killer cannot
       profit from the killer's wrong.
(g)    Felonious and intentional killing; how determined.  After all
       right to appeal has been exhausted, a judgment of conviction
       establishing criminal accountability for the felonious and
       intentional killing of the decedent conclusively establishes the
       convicted individual as the decedent's killer for purposes of this
       section.  In the absence of a conviction, upon the
       petition of an interested person, must determine whether, under
       the preponderance of evidence standard, the individual would be
       found criminally accountable for the felonious and intentional
       killing of the decedent.  If the court determines that, under that
       standard, the individual would be found criminally accountable for
       the felonious and intentional killing of the decedent, the
       determination conclusively establishes that individual as the
       decedent's killer for purposes of this section....

Slayer statutes are not penal, punitive, or compensatory. Restatement (Third) of Property (Wills & Don. Trans.) § 8.4 (2003); Leavy, Taber, Schultz & Bergdahl v. Metro. Life Ins. Co., 581 P.2d 167, 171 (Wash. Ct. App. 1978). Slayers statutes do not cause the killer to forfeit any of their own property. Rather, the rule prevents the killer from benefitting from the wrong he committed. The social interest served by refusing to permit a criminal to profit from his crime is greater than that served by the preservation and enforcement of legal rights of ownership. Estate of Castiglioni, 40 Cal. App. 4th 367, 374-75 (Cal. Ct. App. 1995)(citing Estate of McGowan, 35 Cal. App. 3d 611, 615-616 (Cal. Ct. App. 1973)).

Slayer statutes are construed broadly. Swain v. Estate of Tyre ex rel. Reilly, 57 A.3d 283, 292-93 (R.I. 2012); Castiglioni, 40 Cal. App. 4th at 374-75; In re Estate of Mikes, No. 319362, 2015 WL 1227593, at *4 (Mich. Ct. App. Mar. 17, 2015).

Both Hawaii's slayer statute and the Uniform Probate Code contain a catch-all section on the types of property covered. The provision states that a "wrongful acquisition of property or interest by a killer not covered by this section must be treated in accordance with the principle that a killer cannot profit from the killer's wrong." HRS § 560:2-803(f); Unif. Probate Code § 2-803(f).

**B.  Defendant Melchor Adviento Feloniously and Intentionally Killed the Decedent Erlinda Adviento**

A killing is felonious and intentional pursuant to Haw. Rev. Stat. § 560:2-803(g) if a final judgment of conviction establishing criminal accountability for the felonious and intentional killing of the decedent conclusively establishes the convicted individual as the decedent's killer.

Defendant Melchor Adviento pled guilty to killing Erlinda Adviento.  On December 1, 2015, Melchor Adviento pled guilty to Manslaughter in violation of Haw. Rev. Stat. §§ 707-701.5, 707-707(2).  (Guilty Plea, dated December 1, 2015, in <u>State of Hawaii v. Melchor Adviento</u>, Cr. No. 07-1-2068, Haw. Cir. Ct. 1st Cir.).

The guilty plea specifically stated, as follows:

> I plead guilty because, after discussing all the evidence and receiving advice on the law from my lawyer, I believe that I am guilty.  (Give a brief statement of the fact that establish the defendant's guilt as to each offense to which the defendant is entering a plea pursuant to the requirements of HRS §§ 701-114, 701-115, 702-205, and 702-206, as amended.) **On October 28, 2007, I caused the death of Erlinda Adviento while under the influence of extreme mental or emotional disturbance for which there is a reasonable explanation.**

(<u>Id.</u> at p. 2).

A conviction for manslaughter pursuant to Hawaii law is a felonious and intentional killing for purposes of the Hawaii slayer statute.  Manslaughter is a class A felony.  Haw. Rev. Stat. § 707-702(3).  Manslaughter pursuant to Section 707-702(2) of the Hawaii Revised Statutes also requires that the killing be

20

done intentionally.

Haw. Rev. Stat. § 707-702(2) provides:

> (2)   In a prosecution for murder or attempted
>       murder in the first and second degrees it is
>       an affirmative defense, which reduces the
>       offense to manslaughter or attempted
>       manslaughter, that the defendant was, at the
>       time the defendant caused the death of the
>       other person, under the influence of extreme
>       mental or emotional disturbance for which
>       there is a reasonable explanation.  The
>       reasonableness of the explanation shall be
>       determined from the viewpoint of a reasonable
>       person in the circumstances as the defendant
>       believed them to be.

The Hawaii Supreme Court has held that HRS § 707-702(2), the
statute pursuant to which Melchor Adviento was convicted,
describes the only traditional form of voluntary manslaughter
codified in the Hawaii penal code.  State v. Holbron, 904 P.2d
912, 927-28 (Haw. 1995).

The Hawaii Supreme Court has characterized manslaughter
committed under extreme mental or emotional disturbance as
voluntary manslaughter involving the intentional or knowing
killing of another.  State v. Pinero, 778 P.2d 704, 714 (Haw.
1989); State v. Aganon, 36 P.3d 1269, 1274 (Haw. 2001) (quoting
State v. Sawyer, 966 P.2d 637, 645 (Haw. 1998).

Extreme mental or emotional disturbance is a mitigating
defense which reduces murder to manslaughter.  Pinero, 778 P.2d
at 714.  The extreme mental or emotional disturbance defense does
not negate the intentional state of mind required, rather it
mitigates the offense from murder to manslaughter.  State v.

Adviento, 319 P.3d 1131, 1156 (Haw. 2014).

Here, Defendant Melchor Adviento pled guilty to manslaughter pursuant to Haw. Rev. Stat. § 707-701.5, the statute for second degree murder, and § 707-702(2), which established that he was guilty of manslaughter rather than murder due to extreme mental or emotional disturbance.

The conviction is final and conclusively establishes that Defendant Melchor Adviento committed the felonious and intentional killing of the decedent Erlinda Adviento for purposes of the Hawaii slayer statute, Haw. Rev. Stat. § 560:2-803(g).

Other States with similar slayer statutes have agreed that voluntary manslaughter involves intentional conduct and prevents the killer from benefitting from the decedent's estate. Metro. Life Ins. Co. v. Wenckus, 244 A.2d 424, 425 (Me. 1968); Moore v. State Farm Life Ins. Co., 878 S.W.2d 946, 949 (Tenn. 1994)(citing Conner v. Holbert, 354 S.W.2d 809, 813 (Tenn. Ct. App. 1961)); In re Estate of Mikes, No. 319362, 2015 WL 1227593, at *4 (Mich. Ct. App. Mar. 17, 2015)(citing In re Nale Estate 803 N.W.2d 907, 910 (2010); Nale v. Ford Motor Co. UAW Ret. Plan, 703 F.Supp.2d 714, 723 (E.D. Mich. 2010); Quick v. United Ben. Life Ins. Co., 213 S.E.2d 563, 566 (N.C. 1975); In re Estate of Bartolovich, 616 A.2d 1043, 1044 (Pa. Super. Ct. 1992); State Farm Life Ins. Co. v. Tedesco, No. 3:14-CV-1321, 2016 WL 7365209, at *5 (M.D. Pa. Oct. 12, 2016); In re Mahoney's Estate, 220 A.2d 475, 478 (Vt. 1966).

Defendant Melchor Adviento is precluded from receiving any proceeds from Decedent Erlinda Adviento's life insurance policy pursuant to Hawaii Revised Statutes § 560:2-803.

Defendants Joemelyn Adviento, Judy Adviento, and Jaymelyn Adviento are entitled to equal parts of the group life insurance policy proceeds due Decedent Erlinda Adviento's heirs.

## CONCLUSION

The Clerk of Court's February 22, 2017 Entries of Default (ECF Nos. 20, 21, and 22) are **SET ASIDE.**

Plaintiff Hartford's Motion For Default Judgment (ECF No. 26) is **DENIED.**

Plaintiff Hartford's Prayer For Relief is **GRANTED, IN PART, and DENIED, IN PART.**

The Court **GRANTS** Plaintiff Hartford's request to make a determination as to the rightful beneficiaries to the Policy.

The Court **FINDS** that Plaintiff Hartford has no interest in the benefits of the Policy.

Plaintiff Hartford Life and Accident Insurance Company is **ORDERED** to deposit into the Registry of the Court the life insurance proceeds for the insured Decedent Erlinda Adviento totaling $108,000.00.

Plaintiff Hartford Life and Accident Insurance Company is **DIRECTED** to deposit $108,000.00, by check or money order, made payable to "U.S. District Court," and delivered, together with a

copy of this Order, to the Clerk of Court, as soon as practicable after funds are available, or no later than Friday, August 10, 2018.

Following the deposit of the $108,000.00 in proceeds, Plaintiff Hartford Life and Accident Insurance Company is discharged and **DISMISSED** from the instant action and the Clerk of Court is **DIRECTED** to **ENTER JUDGMENT** as to Plaintiff Hartford pursuant to Federal Rule of Civil Procedure 54(b).

Plaintiff Hartford's request for attorneys' fees and costs is **DENIED.**

Defendants Melchor Adviento, Joemelyn Adviento, Judy Adviento, and Jaymelyn Adviento are **PRECLUDED** from initiating any actions against Plaintiff Hartford Life and Accident Insurance Company relating to the Hartford Life and Accident Insurance Company group life insurance policy Number ADD10900 ("Policy") as to the insured Decedent Erlinda Adviento.

Plaintiff Hartford Life and Accident Insurance Company is released from liability arising from the distribution of the life insurance proceeds for Decedent Erlinda Adviento and the Policy at issue.

The Clerk of Court is **DIRECTED** to deposit the $108,000.00 in funds into an interest bearing account with an authorized depository as specified in General Order 2016-3.

The Court **FINDS** and **CONCLUDES** that the funds to be deposited are interpleader funds pursuant to 28 U.S.C. § 1335, or other

24

funds which qualify as "disputed ownership funds" as that term is defined by the Internal Revenue Service (26 C.F.R. § 1.468B-9(b)(1)). Accordingly, the Administrative Office of the United States Courts is hereby authorized and directed to administer the funds, charge fees, and withhold and pay any taxes due, under its Disputed Ownership Funds system (CRIS DOF).

The Court **FINDS** that Defendant Melchor Adviento is not a beneficiary to the Policy. Defendant Melchor Adviento is precluded from receiving benefits to Decedent Erlinda Adviento's life insurance policy pursuant to Hawaii Revised Statutes § 560:2-803.

The Court **FINDS** that Defendants Joemelyn Adviento, Judy Adviento, and Jaymelyn Adviento are the rightful beneficiaries to the Policy's proceeds.

Defendants Joemelyn Adviento, Judy Adviento, and Jaymelyn Adviento are entitled to equal parts of the life insurance policy proceeds for Decedent Erlinda Adviento.

After the deposit, the Clerk of Court is **ORDERED to distribute the proceeds in equal parts** to Defendants Joemelyn Adviento, Judy Adviento, and Jaymelyn Adviento.

Following the distribution, the Clerk of Court is **DIRECTED** to enter final judgment and **CLOSE THE CASE**.

IT IS SO ORDERED.

DATED: July 10, 2018, Honolulu, Hawaii.



Helen Gillmor
United States District Judge

Hartford Life and Accident Insurance Company v. Melchor Adviento; Joemelyn Adviento; Judy Adviento; Jaymelyn Adviento; Civ. No. 16-00565HG-RLP; **ORDER ON INTERPLEADER**

26